Thomas Denton Geoghegan v. Commissioner.
Geoghegan v. Commissioner
Docket No. 111019.
United States Tax Court
1943 Tax Ct. Memo LEXIS 288; 2 T.C.M. (CCH) 122; T.C.M. (RIA) 43243; May 24, 1943
*288 Theodore B. Benson, Esq., for the petitioner. E. M. Woolf, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,455.03 in income tax for 1940. The taxpayer contends that certain income received in 1940 should be allocated under Section 107 over the period 1930-1940, inclusive, instead of 1931-1939, inclusive, as the Commissioner determined. Findings of Fact The taxpayer, an individual of Washington, D.C., filed a joint return for 1940 for himself and his wife in the District of Maryland. He is a specialist in transportation matters before the Interstate Commerce Commission and State bodies. He had represented the Salem Brick Company, Salem, Virginia, since 1923. In August, 1929, he was consulted about coal rates and a proceeding before the Interstate Commerce Commission respecting them, and conferences followed. In November, 1929, taxpayer was retained to handle the case and in December, 1929, work was begun on the preparation for filing the complaint. A large amount of detail was necessary before the complaint was prepared, and a large part of it was done before the formal retainer contracts were executed. *289 All such preparation work was added into the expense of the case. Before proceeding to make such a preliminary survey, he had a definite agreement with the client as to such expenses. January 10, 1930, taxpayer conferred with the Virginia Corporation Commission as that Commission was considering filing similar complaints. On January 18, he discussed the case with thirty or thirty-five people in Martinsville and Danville and they decided to participate in the case. During January, February and March, 1930, additional conferences were held with groups in Bluefield, Wytheville, Danville and Martinsville. The groups were called together and the taxpayer attended. There were as yet no written contracts with these groups because they had to decide among themselves how the cost was to be apportioned among them. Taxpayer considered that his employment began in 1929, because that was when he began work on the general subject. The formal written contracts in the several cases were executed as follows: District Court
I.C.C.
Docket No.
Docket No.
Parties and Destination
Date
3698
24882
Group at Danville
July 26, 1930
3699
25947
27 parties at Danville and intermediate points
March 10, 1933
July 15, 1933
Nov. 8, 1933
3700
24885
8 parties at Harrisonburg
June 15, 1931
Aug. 25, 1931
3702
23817
28 parties in Roanoke and points west
Apr. 9, 1930
July 12, 1930
Oct. 23, 1930
Nov. 24, 1930
3704
25885
41 parties in all the above territory except
Apr. 9, 1930
Danville
Feb. 1, 1933
3759
23817
1 party at Martinsville
Apr. 9, 1930
Ex parte 115
All above parties
*290 Ex parte 115 involved a proposed increase by the railroads in coal freight rates, and taxpayer represented all the foregoing complaints in opposing the increase. Taxpayer rendered services before the Interstate Commerce Commission and as a witness in the United States District Court proceedings. He prepared most of the information that was used by the attorneys presenting the cases in the United States District Court. The services of himself and his staff were continuous on these cases up to the time when briefs were filed in the District Court. The eleven payments totaling $70,316.52 for the services rendered in these cases were all received in 1940 - on August 7. 16, 20, 24, 27 and 31, September 4, 7 and 16, October 12, and December 7. Opinion STERNHAGEN, J.: Both the taxpayer and the Commissioner agree that upon the fees received by him in 1940, the tax is imposed by the method set forth in Section 107, Internal Revenue Code. The only disagreement is whether the Commissioner has correctly used only the years 1931 to 1939 or should properly have used the years 1930 to 1940, as the taxpayer contends. The taxpayer's argument for the longer period is based upon the assertion *291 that the services were rendered in the earlier year 1930 and the later year 1940. Obviously this is a question of fact which is disposed of by the findings; and the findings can only be such as are supported by the evidence within the framework of the pleadings. The taxpayer began his services upon the subject matter of the rate cases in the latter part of 1929, and he is clearly entitled therefore to have the year 1930 included in the period covered by the 1940 receipts in question. He does not ask that 1929 be included, and that needs no consideration in this case; but plainly he is entitled to have 1930 included as he contends. The Commissioner has himself included all the subsequent years up to and including 1939; so that is free from controversy. The evidence does not, however, support a finding that any part of the service was performed in any period after 1939. It is clear upon the evidence, therefore, that the determination should be revised to spread the $70,316.52 over the period of the years 1930 and the succeeding years to and including 1939. The year 1940 may not be included in the period. Since the case is determined entirely as a matter of evidence, there is no occasion *292 to consider the legal question which petitioner attempts to raise as to whether Section 107 requires the inclusion in the spread period of a part of a calendar year. Decision will be entered under Rule 50.